## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

DANIEL DURON,

      Plaintiffs,

v.                                                          Civ. No. 24-1004 GJF/JHR

PILOT TRAVEL CENTERS, LLC and
STORE MANAGER PILOT TRAVEL
CENTER NUMBER 163, LORDSBURG,
NEW MEXICO,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Defendant Pilot Travel Centers, LLC's Motion to Exclude Plaintiff's Experts [ECF 36] ("Motion to Exclude Experts") and Plaintiff's Motion for Extension of Time to Disclosure [sic] Rebuttal Experts [ECF 51] ("Motion for Rebuttal Experts Extension"). These motions are fully briefed. *See* 36, 50–51, 56, 58, 64. For the reasons that follow, the Court **GRANTS** the former and **DENIES** the latter.

## I.    BACKGROUND

This case arises from a June 2021[1] slip and fall at a Lordsburg, New Mexico Pilot Travel Center. ECF 1-1 ¶¶ 4, 7. Plaintiff alleges that while exiting his vehicle in one of the station's fuel bays, he slipped, fell, and sustained injuries. *Id*. ¶¶ 8, 10. Just before the expiration of the three-year statute of limitations, Plaintiff filed suit against Defendant, alleging that it negligently maintained the station's parking lot and service bay and that its acts and omissions were willful,

---

[1] The Complaint provides conflicting dates for the slip and fall incident, indicating that the "the incident giving rise to th[e] lawsuit occurred on June 23, 2021" [ECF 1-1 ¶ 4] but also that Plaintiff was at the Lordsburg Pilot Travel Center on June 22, 2021 [*id*. ¶ 7]. The precise date of Plaintiff's fall is not material to resolution of either motion addressed herein.

malicious, reckless, and/or wanton. *Id*. ¶¶ 9, 19, 25. Plaintiff seeks compensatory and punitive damages. *Id*. ¶ 40.

Shortly after Defendant removed this matter to federal court [ECF 1], the parties exchanged initial disclosures [s*ee* ECFs 13, 15]. For his part, Plaintiff identified certain medical providers likely to have discoverable information, but did not include a list of his prior healthcare providers, specify the nature of his injuries, or provide a calculation of his damages. *See* ECF 36, Ex. A; *see also* ECF 16 (Clerk's Minutes) (noting that "Defendant [was] awaiting a list of prior providers per the local rules"). Although Plaintiff produced some 7,500 pages of medical records, Defendant represents that many of those records were "duplicative and generally did not pertain to treatment obtained for injuries that could even arguably be attributed to the subject accident."[2] ECF 36 at 3 & Ex. A at 5. In the months that followed, Plaintiff twice supplemented his initial disclosures, eventually providing a list of treating providers for the preceding five years, a signed medical authorization, and some billing records, but he neither elaborated on the injuries he allegedly sustained in the June 2021 fall nor provided any calculation of damages.[3] *Id*. at 3 (citing ECFs 21, 22).

Ahead of the Court's November 18, 2024 Initial Scheduling Conference, counsel met and conferred, agreeing to certain case management deadlines, including a January 17, 2025 deadline for Plaintiff's expert disclosures and a March 3, 2025 deadline for Defendant's expert disclosures. ECF 14 at 1, 10. Defendant reports that at the parties' conference Plaintiff's counsel did not mention any difficulty securing medical records nor indicate that Plaintiff may need an extension

---

[2] According to Defendant, many of the medical records related to a gunshot wound Plaintiff sustained two weeks after the subject fall. ECF 36 at 3.

[3] Neither party has provided the Court Plaintiff's Supplemental Initial Disclosures or Second Supplemental Initial Disclosures, but Plaintiff does not dispute Defendant's representations as to their contents. *See* ECFs 36, 50.

of his expert disclosure deadline. ECF 58 at 1–2. Following the Initial Scheduling Conference, Judge Ritter entered a Scheduling Order that imposed the agreed upon expert disclosure deadlines. ECF 17. In addition, he imposed an April 4, 2025 termination date for discovery and a May 16, 2025 deadline for pretrial motions. *Id*. Defendant represents that Plaintiff's counsel did not broach with Judge Ritter any potential delay in obtaining medical records. ECF 58 ¶ 3.

A few weeks later, after soliciting input from the parties, the undersigned set the jury trial for November 10, 2025, and the final pretrial conference for September 23, 2025. ECFs 19, 20.

On his January 17, 2025 expert disclosure deadline, Plaintiff disclosed both retained and non-retained experts. *See* ECF 36, Ex. B. First, he identified Gary White as a "retail expert," indicating that Mr. White "is expected to testify regarding industry standards and practices, Defendant's safety practices and any deviations from accepted standards, including how the identified hazard directly caused the fall and the potential impact on the Plaintiff's injuries." *Id*. at 1. Next, Plaintiff disclosed two retained medical experts: Thomas Garzillo, DC, CLCP, LCP-C and Thomas Peatman, M.D. *Id*. at 1–2. According to Plaintiff, the former would testify as to the "costs and reasonableness of the cost of [his] future medical expenses" and the latter would testify as to his "injuries, causation of same, [his] reasonable and necessary medical care, and [his] reasonable and necessary medical expenses." *Id*. at 2–3. Finally, Plaintiff listed nine separate medical facilities, indicating that some unnamed, non-retained providers at those facilities would testify as to his "injuries, causation of the same, [his] reasonable and necessary medical care, and [his] reasonable and necessary medical expenses." *Id*. at 3–5. In addition to the identification of these experts, Plaintiff produced testimony lists, fee schedules, and CVs for the three witnesses he disclosed as retained experts. ECF 36 at 4. But critically, he did not produce any expert reports,

provide any further details as to the experts' expected opinions, or identify the facts and data they considered in forming their opinions. ECF 36 at 4 & Ex. B.

Immediately upon receipt, Defense counsel e-mailed Plaintiff's counsel to advise that Plaintiff's expert disclosures were deficient under Federal Rule of Civil Procedure 26(a)(2)(B) and that, as a result, Defendant would need additional time to disclose its own experts after it received Plaintiff's expert reports. ECF 36, Ex. C (Jan. 17, 2025 email from Garrett to Gaddy noting that Plaintiff had not provided expert reports for his three retained experts and explaining that Defendant would need "six weeks after it received an expert report from each" retained expert to disclose its own experts). In response to that communication, and for the first time, Plaintiff's counsel requested a two-week extension to provide expert reports. ECF 58 at 2. Defendant initially did not oppose Plaintiff's requested extension, so long as Defendant received an equivalent extension for its own expert disclosures. ECF 39 ¶ 11. Accordingly, on January 28, 2025, the parties filed a stipulated motion asking the Court to extend Plaintiff's then-expired expert disclosure deadline from January 17, 2025 to February 17, 2025, explaining that "[a]t the time of [the] deadline, Plaintiff did not have any expert reports to disclosure [sic]." ECF 25 at 1. As to Defendant's expert disclosure deadline, the parties requested an extension to April 14, 2025. *Id.*

The next day, Judge Ritter denied without prejudice the parties' stipulated motion, explaining that the requested extensions were "untenable" given the other pretrial deadlines in place and the presiding judge's pretrial conference and trial settings. ECF 26. The following week, Judge Ritter held a status conference at which Defendant advised that it still had not received Plaintiff's expert reports or any summary of supporting facts and opinions, leaving Defendant unable to prepare responsive reports. ECF 32. Defendant recounts that Plaintiff's counsel explained to the Court that he was having difficulty obtaining records from Plaintiff's California-

based medical providers and that he had issued a subpoena earlier that day. ECF 36 at 4. But Defendant points to a certificate of service suggesting that Plaintiff's counsel did not issue that subpoena until the day after the parties' status conference with Judge Ritter. *Id.* (citing ECF 31). According to the Clerk's Minutes from the status conference, the parties "discussed possible extensions of discovery and pretrial motions deadlines" but reached no agreement. ECF 32. In the absence of an agreement, Judge Ritter told the parties that they had "leave to file appropriate motions." *Id.*

A week later, Plaintiff filed an *opposed* Motion to Extend Deadlines and Reset Trial in which he requested an extension of pretrial deadlines, including an even longer extension for his expert disclosure deadlines, until March 10, 2025. ECF 35 at 1. Recognizing that his proposed extended deadlines would necessarily affect the trial date, Plaintiff proposed that the November 10, 2025 jury trial be moved to sometime after December 26, 2025. *Id.* at 2. In response, Defendant observed that Plaintiff failed to offer any explanation—let alone establish good cause—for requesting deadline extensions and resetting of the trial date. ECF 39. In reply, Plaintiff lamented that he had encountered "unforeseen difficulties in obtaining necessary medical records and billing information, which [were] critical to the preparation of expert reports" and that he "filed his motion for extension of time as soon as he became aware of the need for additional time and *before the deadline*." ECF 45 at 2 (emphasis added). But to the contrary, Plaintiff's motion was filed nearly a month *after* his January 17, 2025 expert disclosure deadline had passed. Moreover, the parties' earlier stipulated motion was filed eleven days *after* that same deadline. Plaintiff's opposed Motion to Extend Deadlines and Reset Trial [ECF 35] remains pending before Judge Ritter.

While the parties were briefing motions related to pretrial deadlines, discovery was underway. Defendant propounded its first set of written discovery on Plaintiff in early January

2025 [ECF 23], and according to Defendant, it was in Plaintiff's February 5, 2025 responses to those requests when Plaintiff first addressed with any specificity the injuries sustained in his June 2021 fall. ECF 36 at 5 (citing ECF 36, Ex. D). There, Plaintiff stated that "since his fall," he had experienced "injury to both arms, wrists, shoulders and rotator cuff injury." ECF 36, Ex. D at 2–3 (Interrogatory 5). Plaintiff's other discovery responses were even less illuminating. For instance, Plaintiff responded to a request for information about medical expenses claimed as damages by referring Defendant to more than 8,000 pages of records, many of which Defendant insists document treatment unrelated to Plaintiff's June 2021 fall. ECF 36, Ex. E at 3 (Request for Production 10). When asked about his claim for future medical expenses, Plaintiff responded that he "must defer to his treating providers . . . and expert witnesses." ECF 36, Ex. D at 3 (Interrogatory 6). In addition, Plaintiff offered no information in response to a request about prior hospitalizations and medical procedures, despite indications in his medical records that he sustained a gunshot wound two weeks after his June 2021 fall. *Id.* at 8 (Interrogatory 8) (answering "Plaintiff will supplement.") Finally, in his responses to requests for information about expert witnesses, Plaintiff simply copied and pasted the same information already provided to Defendant in his expert disclosures [*Compare* ECF 36, Ex. D at 5–9, *with* ECF 36, Ex. B] and confirmed that his experts' reports were not yet available [ECF 36, Ex. E at 2–3 (Request for Production 7)].

On February 17, 2025—the date to which Defendant initially agreed to extend Plaintiff's expert disclosure deadline [*see* ECF 25]—Defendant filed its Motion to Exclude Experts. ECF 36. Therein, Defendant advises that "nearly a month has passed" since the parties agreed to request an extension of their respective expert disclosure deadlines, and Plaintiff "still has not produced any [expert] reports." *Id.* at 4. Defendant further represented that Plaintiff had "not yet identified with any particularity what injuries he sustained in th[e] alleged accident, ha[d] not produced complete

medical records from any healthcare provider reflecting treatment for those injuries, and ha[d] not provided a calculation of what expenses he claims are associated with that treatment." *Id.* at 6. In addition, Defendant reports that Plaintiff "ha[d] not identified what his liability expert [would] say [Defendant] did wrong." *Id*.

In a notice filed on its own expert disclosures deadline, Defendant asserts that Plaintiff's failure to timely provide expert reports and his "broad generic and non-specific" expert disclosures have left Defendant unable to "meaningfully ascertain Plaintiff's experts' opinions or evaluate its need to consult and disclose experts." ECF 40 ¶ 6. Accordingly, Defendant "requests and reserves the right to identify trial experts following the Court's ruling on its Motion to Exclude Plaintiff's Experts." *Id*. ¶ 8.

On March 17, 2025, Plaintiff finally provided the long-awaited expert reports for his three retained experts. *See* ECF 48; ECF 50 at 7. The reports arrived two months after they were due, a month beyond the extended deadline the parties jointly proposed but the Court rejected, and two weeks after *Defendant's* expert disclosures deadline. *See* ECFs 17, 25, 48, 50. In his concurrently filed response to Defendant's Motion to Exclude Experts, Plaintiff's counsel explains that he encountered "unforeseen problems . . . in the collection of . . . medical records and bills," which Plaintiff's experts needed to complete their evaluations and reports. ECF 50 at 6.

That same day, Plaintiff filed his Motion for Rebuttal Experts Extension [ECF 51] and served on Defendant his "Rebuttal Expert Disclosure" [ECF 49]. According to Defendant, Plaintiff's Rebuttal Expert Disclosure identified the very same retained experts Plaintiff previously disclosed on January 17, 2025, but for the first time appended expert reports. ECF 58 at 4. Defendant describes Plaintiff's Rebuttal Expert Disclosure as "an astonishing display of gamesmanship" and reports that it immediately requested its withdrawal. *Id*. ¶ 15 & Ex. A.

Plaintiff withdrew the disclosure the following day. ECF 52. In his reply in support of his Motion for Rebuttal Experts Extension, Plaintiff explains that he sought an extension "[i]n an abundance of caution," since his opposed motion to extend deadlines remained pending at that time, and Rule 26(a)(2)(D)(ii) requires disclosure of rebuttal experts within thirty days of service of expert disclosures by the other party. ECF 64 ¶¶ 9–10.

With issues related to Plaintiff's expert disclosures still unresolved and his opposed Motion to Extend Deadlines still pending, discovery closed on April 4, 2025. Then, on May 15, 2025, Defendant filed three motions for partial summary judgment. ECFs 66–69. The next day, on the deadline for dispositive motions, Plaintiff filed his own motion for summary judgment, a motion in limine, and another motion requesting the extension of deadlines. ECFs 70–72.

## II.    RELEVANT LAW

Federal Rule of Civil Procedure 26 governs the disclosure of expert witnesses and the use of expert witness testimony at trial. Under this rule, the disclosure requirements vary depending on whether a given expert is retained or non-retained. *Compare* Fed. R. Civ. P. 26(a)(2)(B) (governing "retained or specially employed" experts), *with* Fed. R. Civ. P. 26(a)(2)(C) (governing "non-retained" experts). For a non-retained expert, a party must disclose the subject matter on which the expert is expected to present evidence and a summary of the facts and opinions on which he or she is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). A non-retained expert witness's opinion testimony may be offered insofar as those opinions were formed during the expert's participation in the underlying events in the case. *See Skarda v. Johnson & Johnson*, No. 09-CV-1186-KG-WLP, 2014 WL 12792345, at *3 (D.N.M. June 30, 2014). A non-retained treating physician may provide opinion testimony about his or her actual care and treatment of the plaintiff-patient, but

that physician may not provide opinion testimony about the care the plaintiff-patient received from other medical professionals. *Id*.

Conversely, a retained expert may offer an opinion following his or her review of records or reports from another physician. *Id*. Rule 26(a)(2)(B) requires disclosure of a retained witness's identity along with a detailed expert report. Fed. R. Civ. P. 26(a)(2)(A)–(B). The expert report must contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the facts considered by the witness in forming his or her opinions; any exhibits to be used as a summary of or support for the opinions; the witness's qualifications, including publications authored within the preceding ten years; a listing of other cases in which the witness testified as an expert within the preceding four years; and the compensation to be paid to the expert. Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi).

A party must make expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). If a party fails to identify an expert witness in accordance with Rule 26(a), the witnesses' testimony may not be used during pretrial or trial proceedings unless the failure "was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). In determining whether a party's failure to comply with Rule 26(a) was "substantially justified or harmless," the district court is entrusted with "broad discretion." *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 953 (10th Cir. 2002). Although no explicit findings on this issue are required, courts should consider (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability to cure any prejudice; (3) whether allowing the evidence would disrupt the trial; and (4) the violator's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999). The burden is on the party resisting sanctions for belated disclosure to demonstrate that the failure to timely disclose was justified or harmless. *See Wilson v. Bradlees*

*of New Eng., Inc.*, 250 F.3d 10, 21 (1st Cir. 2001); *The Quapaw Tribe of Okla. v. Blue Tee Corp.*, No. 03-CV-0846-CVE-PJC, 2010 WL 3909204, at \*6 (N.D. Okla. Sept. 29, 2010).

## III.    DISCUSSION

### A.  Defendant's Motion to Exclude Experts

Defendant argues that Plaintiff's experts were not adequately or timely disclosed pursuant to Rule 26 and, further, that Rule 37(c) requires their exclusion because Plaintiff's deficient disclosures were not substantially justified or harmless. ECF 36 at 1. As explained below, the Court finds that Plaintiff's deficient disclosure of his treating providers and his late disclosure of his retained experts' reports were neither substantially justified nor harmless. As such, the Court will exclude both Plaintiffs non-retained and retained experts.

#### i.   Plaintiff's Non-Retained Experts

Defendant contends that Plaintiff's disclosure of non-retained experts fails to satisfy the requirements of Rule 26(a)(2)(C), which requires identification of "the subject matter on which the witness is expected to resent evidence" and a "summary of the facts and opinions on which the witnesses is expected to testify." ECF 36 at 10 (quoting Fed. R. Civ. P. 26(a)(2)(C)(i)–(ii)). As Defendant observes, "[t]his district requires that treating physicians' disclosures elucidate the 'matter, facts, and opinions to which each physician will testify' in a manner that goes beyond generalities." *Id*. (quoting *Martinez v. Cont'l Tire the Ams., LLC*, No. 1:17-cv-00922-KWR-JFR, 2022 WL 2290597, at \*3 (D.N.M. June 24, 2022)). Indeed, such "disclosures must contain a level of specificity as to obviate the need to 'sift through the medical records to attempt to figure out what each expert may testify to." *Martinez*, 2022 WL 2290597, at \*3 (quoting *Ramirez v. Ultimate Concrete, LLC,* No. 13CV649 JCH/LAM, 2015 WL 12832341, at \*2 (D.N.M. Feb. 10, 2015)).

Plaintiff offers the same broad and imprecise description of expected testimony for each non-retained medical provider: that the testimony will relate to his injuries, causation, and his reasonable and necessary medical care and expenses. *See* ECF 36, Ex. B at 3–5. Plaintiff does not direct Defendant to any medical records or bills upon which the witnesses intend to rely. *Id*. Most notably, Plaintiff does not disclose the name of any medical *provider* from whom he intends to elicit testimony, referring instead to nine different medical *facilities* where he received treatment. *See id*. Rule 26(a)(2)(C) requires more.

Perhaps recognizing as much, Plaintiff makes no attempt to argue that the disclosures of his non-retained medical providers somehow satisfy Rule 26(a)(2)(C) or that any deficiency in those disclosures was substantially justified or harmless. *See* ECF 50 (addressing only Plaintiff's *retained* experts).  Plaintiff's lack of response effectively concedes that the non-retained treating providers he identifies as experts may not offer expert testimony. *See Addams v. Applied Medico-Legal Sols. Risk Retention Grp., Inc*., No. 21-952 JCH/LF, 2022 WL 1170859, at *3 (D.N.M. Apr. 20, 2022) ("[W]hen filing 'an opposition to a dispositive motion and address[ing] only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)). Thus, to the extent Defendant seeks exclusion of Plaintiff's non-retained experts, its Motion is well-taken. Plaintiff is prohibited from eliciting *expert* testimony from his treating providers, including as to medical causation or prognosis. *See Walker v. Spina*, No. CIV 17-0991 JB/SCY, 2019 WL 145626, at *21–22 (D.N.M. Jan. 9, 2019).

### ii. Plaintiff's Retained Experts

When Plaintiff served his expert disclosures on January 17, 2025, he did so without producing any expert reports as required by Rule 26(a)(2)(B). Plaintiff disputes neither the inadequacy of his expert disclosures nor the untimeliness of his expert reports. *See* ECF 50.

Rather, he suggests that these deficiencies were substantially justified and harmless. *Id.* at 5–10. Defendant insists that Plaintiff has demonstrated neither substantial justification nor harmlessness. ECF 56 at 2–8. Both sides agree, however, that the factors articulated in *Woodworker's Supply* guide the Court's analysis of the issue. *See* ECF 50 at 5; ECF 56 at 2–3. Those factors include (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability to cure any prejudice; (3) whether allowing the evidence would disrupt the trial; and (4) the violator's bad faith or willfulness. *Woodworker's Supply*, 170 F.3d at 993.

As to the first factor, the Court finds that Plaintiff's untimely expert disclosures significantly prejudiced Defendant. Plaintiff retained experts to opine on critical topics central to issues in this case, such as liability, medical causation, and damages. Permitting Plaintiff's untimely disclosures at this juncture would no doubt require Defendant to shift its entire litigation strategy. After all, Defendant's expert disclosure deadline has passed, discovery has closed, the parties have filed dispositive motions, and trial is rapidly approaching. Although Plaintiff contends that Defendant "knew of [his] injuries and had enough information to supply their own expert[s]" even before he provided expert reports [ECF 50 at 6], the Court is not convinced. Defendant represents, and Plaintiff does not dispute, that Plaintiff did not identify which parts of his body were allegedly injured in the subject fall until February 5, 2025, three weeks after his expert disclosure deadline and only twenty-six days before Defendant's expert deadline. And even then, Plaintiff offered very little detail. *See* ECF 36, Ex. D, at 3. In the absence of a more fulsome disclosure of Plaintiff's alleged injuries and a more detailed summary of his experts' expected opinions, Defendant lacked the information necessary to obtain and disclose its own expert(s), forcing it to litigate this case and file dispositive motions without the aid of expert witness(es). This factor weighs strongly in Defendant's favor.

As to the second factor, the Court can discern no cure for the resulting prejudice to Defendant short of reopening discovery, extending Defendant's expert disclosure deadlines and other pretrial deadlines, permitting the parties to redraft and refile dispositive motions, and vacating the pretrial conference and jury trial. Such a "cure" would result in substantial cost to Defendant and would entirely derail this case, which relates to an incident that occurred nearly four years ago. *See Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 F. App'x 334, 344 (10th Cir. 2020) ("[W]hile Defendant may have had *some* ability to cure the prejudice, this ability was constrained by costs and court-imposed deadlines. . . . [W]e find the district court did not abuse its discretion in so concluding." (emphasis in original)). To the extent Plaintiff suggests that prejudice to Defendant could have been "easily cured" by simply granting his opposed Motion for Extension of Pretrial Deadlines [ECF 50 at 6–8], the Court observes that Plaintiff made no effort in that motion to demonstrate good cause for the extensions he requested [*see* ECF 35]. Relatedly, as to the third factor, the Court finds that excusing Plaintiff's deficient and untimely expert disclosures would necessarily sacrifice the November 10, 2025 trial date to which both sides agreed. Thus, both the second and third factors also weigh in Defendant's favor.

The fourth factor—the violator's bad faith or willfulness—is the most difficult for the Court to assess. Although the Court does not find direct evidence of bad faith, Plaintiff's counsel has demonstrated what the Court considers to be a breezy approach to complying with Rule 26(a)(2) and the deadlines imposed by the Court. Notably, Plaintiff did not request an extension of his expert disclosure deadline until after that deadline had passed and only then after Defendant requested that its own deadline be extended due to the deficiencies in Plaintiff's disclosures. And again, when Plaintiff filed a second motion for extension of expert report deadlines, after Judge Ritter denied the parties' joint motion, he made no effort to demonstrate good cause for the

requested extensions until his reply brief. *See* ECFs 35; 45; *see Beaird v. Seagate Tech*., 145 F.3d 1159, 1165 (10th Cir. 1998) (explaining that a trial court may refrain from relying on any new material contained in a reply brief). By failing to produce the required expert reports until two months after they were due and two weeks after the deadline for *Defendant's* expert disclosures. [*see* ECFs 17, 48, 50], Plaintiff effectively left Defendant without the chance to retain and disclose its own experts, nor any opportunity to depose Plaintiff's experts. *See* Fed. R. Civ. P. 26(b)(4) ("A party may depose any person who has been identified as an expert . . . [but] *only after the [expert's] report is provided*." (emphasis added)).

With respect to Plaintiff's liability expert, Plaintiff offers no explanation for his untimely expert disclosure. *See* ECF 50. In contrast to his retained *medical* experts, Plaintiff does not suggest that Mr. White's opinions depended on his review of medical records or bills. *See id*. Accordingly, he has failed to demonstrate substantial justification or harmlessness for the deficient disclosure of Mr. White.

In contrast, Plaintiff's counsel insists that his retained medical experts, Drs. Garzillo and Peatman, could not prepare their expert reports until they reviewed his complete medical records. *Id*. at 3.  In this regard, Plaintiff's counsel represents that "[a]s soon as it became clear that Plaintiff's treatment was completed, there were diligent efforts made to obtain and secure medical records and bills from Plaintiffs [sic] various providers." *Id*. at 9. Plaintiff's counsel reports that, although his office began requesting records in September 2024, the records arrived "haphazardly from the various medical providers" located in California until all records were finally received by March 12, 2025. *Id*. at 3, 6–7. In support, he provides a chart detailing the efforts undertaken by his office to obtain medical records and bills. ECF 50, Ex. 5.

But Defendant objects to Plaintiff counsel's account of his diligence in obtaining records, suggesting that "[f]ar from establishing an unnavigable system, the chart produced by Plaintiff reveals the failure of counsel to acquire a list of medical providers from his client and a lack of diligence in pursuing the basic medical documentation needed to support Plaintiff's claimed injuries." ECF 56 at 6. Defendant observes that Plaintiff's counsel did not have a complete list of Plaintiff's medical providers when he began requesting records in September 2024. *Id*. at 6 (citing ECF 50, Ex. 5 at 2) (indicating that Plaintiff's counsel communicated with Plaintiff about which medical providers he had seen on October 30, 2024). Defendant further observes that in some cases Plaintiff received records within a few days (e.g., two days, six days, and eight days) of transmitting payment for those records. *Id*. at 6–7 (citing Ex. 50, Ex. 5).

To be sure, Plaintiff's chart suggests that his counsel did not commence medical record collection efforts until September 2024, at which time he did not yet have a complete list of Plaintiff's providers. *See* ECF 50, Ex. 5. And Plaintiff's counsel does not explain why he waited until it was "clear that Plaintiff's treatment was completed," as he put it, to begin requesting records, despite Plaintiff having filed his lawsuit against Defendant two months earlier. *See* ECF 50 at 9. There are also instances in which Plaintiff's payment of an outstanding invoice appears to have resulted in the prompt provision of medical records. *See* ECF 50, Ex. 5. Still, the chart documents considerable back and forth between Plaintiff's counsel's office and various medical providers throughout late 2024 and early 2025, as well as follow-up requests for records identified as "missing." *See id*. Had Plaintiff's counsel simply alerted the Court and Defense counsel of these difficulties in advance of Plaintiff's deadline for expert disclosures—or had he tried to demonstrate good cause for a request for extension of pretrial deadlines shortly thereafter—Defendant and the Court may have looked more favorably upon such a request. Instead, Plaintiff's counsel

demonstrated insufficient concern for complying with Rule 26(a)(2) and a similarly insufficient concern for the Court's pretrial deadlines and trial setting. Defendant and the Court reasonably expected that this case would be resolved in accordance with the applicable rules and, absent any advance indication to the contrary, within the agreed timelines. Ultimately, this final factor tips in Defendant's favor as well.

In sum, the *Woodworker's Supply* factors weigh in favor of excluding Plaintiff's experts and, viewing the totality of circumstances, the Court concludes that Plaintiff has failed to demonstrate that his deficient and untimely expert disclosures were substantially justified or harmless. The Court regrets that Plaintiff's case may be adversely impacted by his inability to present expert testimony, but the Court could not in good conscience excuse the multiple violations set forth above.

### B.  Plaintiff's Motion for Rebuttal Experts Extension

Because the Court grants Defendant's Motion to Exclude Experts, it need not permit Defendant the additional time it conditionally sought to disclose its own experts in response. *See* ECF 40. It follows that Plaintiff need not designate experts to rebut those of Defendant. As such, the Court denies as moot Plaintiff's Motion to Extend Rebuttal Experts Deadline.

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Pilot Travel Centers, LLC's Motion to Exclude Plaintiff's Experts [ECF 36] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to Disclosure [sic] Rebuttal Experts [ECF 51] is **DENIED AS MOOT**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***